Anna Moritz, OSB No. 225306
Alex Hagel, OSB No. 226147
Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563,
Seattle, WA 98104-2246
(206) 607-8277 [tel]
Email: anna@cedarlawpllc.com
       alex@cedarlawpllc.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| A.A., | Case No.: |
| Plaintiff, | |
| v. | COMPLAINT FOR DAMAGES |
| OREGON HEALTH SCIENCES UNIVERSITY, | DEMAND FOR JURY TRIAL |
| Defendant. | |

Plaintiff brings this action to recover damages for discrimination on the basis of race and/or national origin by supervisors at the Oregon Health Sciences University School of Medicine. Plaintiff alleges violations of Title VI of the Civil Rights Act of 1964. Plaintiff also alleges discrimination and retaliation on the basis of disability pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

**I.   PARTIES**

Complaint for Damages
Page 1 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

1.1   Plaintiff A.A. is a third-year medical student at the Oregon Health Sciences University School of Medicine.

1.2   Plaintiff resides and has resided at all times relevant to this action within the city of Portland.

1.3   Defendant Oregon Health Sciences University ("OHSU") School of Medicine, which is located at 3266 SW Research Dr OHSU, 4th Floor, Portland, OR 97239.

## II.   JURISDICTION AND VENUE

2.1   The Plaintiff's federal discrimination claims arise from Title VI of the Civil Rights Act of 1964, as codified at 42 U.S.C. § 2000d et seq. Plaintiff also alleges discrimination claims under the Americans with Disabilities Act, as codified at 42 U.S.C. § 12101 et seq., and under Section 504 of the Rehabilitation Act of 1973, as codified at 29 U.S.C. § 794(a). Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court possesses original jurisdiction over the Plaintiff's Title VI, Section 504, and ADA claims.

2.2   All acts and omissions at issue occurred in the District of Oregon. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

## III.   FACTUAL ALLEGATIONS

3.1   Plaintiff is a third-year medical student at Oregon Health Sciences University ("OHSU") School of Medicine. Plaintiff was born in the United States but lived in Iran between the ages of two and eighteen and is identifiable as a person of Iranian heritage.

3.2   Plaintiff is also an honorably discharged US Army veteran. Related to his service in the Army, he has diagnosed posttraumatic stress disorder ("PTSD") and depression. Plaintiff also has diagnosed irritable bowel syndrome ("IBS").

3.3   In his third year, the Plaintiff has completed a number of rotations with different

Complaint for Damages
Page 2 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

specialty units as part of the medical school curriculum. The rotation grading consists of supervisor ratings on a variety of competencies, including "professionalism."

3.4     Overall Plaintiff has done well academically and has had positive evaluations from nearly every clinical rotation. Notably, he passed the professionalism component of all other rotations, and some with ratings of "exceptional professionalism."

3.5     Plaintiff completed a rotation in Pediatrics (PEDI 730) in November 2024. For PEDI 730, he spent the first two weeks in the OHSU pediatric nephrology unit and the second two weeks in pediatrics at Kaiser.

3.6     Over the first two weeks at the OHSU pediatric nephrology unit, Plaintiff experienced one situation in which the supervising doctor misunderstood a question that the Student had asked and interpreted it as a criticism. Plaintiff attempted to explain, but despite his efforts the supervising attending became very angry and raised their voice at him.

3.7     OHSU policies require rotation supervisors to issue mid-rotation feedback: "Midterm feedback will be provided to all students in the seven required core clinical experiences, and a standard form will be used to document this feedback." Student Handbook at 114. This feedback is intended to provide students with an opportunity to correct their errors and receive a passing grade.

3.8     Defendant issued its midterm feedback form late to Plaintiff, and the form only included feedback regarding "organization of written reports/presentations" and "completeness of data collection."

3.9     Yet, the Plaintiff received a failing grade in PEDI 730 for "professionalism" concerns that were never raised during his rotation.

3.10    During his time at the OHSU pediatric nephrology unit, Plaintiff experienced

Complaint for Damages
Page 3 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

several instances of discrimination. During the Plaintiff's PEDI 730 rotation at the OHSU pediatric nephrology unit, at one point Mark Joseph, an attending physician, boasted that now he is "in charge" he could make accents that he had previously been told were in appropriate and proceeded to mimic foreign accents in Plaintiff's presence. Plaintiff speaks with an identifiable accent, and this mocking made him feel isolated and uncomfortable.

3.11    On another occasion, a supervising resident implied that the Plaintiff was sexist due to his middle eastern background. The Plaintiff had been assigned a patient of middle eastern origin, and his mother who was usually present was wearing full hijab. Jaide Farr, a resident physician and one of Plaintiff's supervisors, asked Plaintiff if he thought this was normal. Plaintiff replied that he had no comments regarding what people choose to wear. Dr. Farr said something similar to "that's a convenient answer from a man from Iraq, since women are forced to wear this type of clothing by men like you, and it is obviously not her personal choice."

3.12    It should be noted that the two "exceptional" grades in professionalism received at other rotations were from female evaluators and two of the Plaintiff's three recommendation letters for medical school were from female instructors.

3.13    On a third occasion, a resident asked if the Plaintiff voted. The Plaintiff responded that he wasn't active politically and often did not vote, at which the resident made a comment to the effect, "Yeah, most Army people vote republican anyway." This was very disturbing to the Plaintiff.

3.14    In his final evaluation that resulted in a failing grade due to alleged professionalism concerns, supervising residents and attending physicians rated Plaintiff as "disrespectful" for "interrupting" because he would frequently say "I know" – short for "I know

Complaint for Damages
Page 4 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

what you mean" – during conversation to show he was engaged. To have assigned a negative intent and meaning to the Plaintiff's use of this phrase carries the mark of cultural bias on the part of the evaluators.

3.15   The only reason Plaintiff received a failing grade in PEDI 730 was for "professionalism concerns." It has been documented in research studies that racial minority medical students receive statistically more "professionalism" concerns. The study cites allegations such as disrespect, lack of awareness, and being defensive to feedback as common reasons why these students receive negative scores on professionalism. This is the same feedback that Plaintiff received from the OHSU Pediatric Nephrology supervisors.

3.16   In sharp contrast to the evaluation following the two weeks at the OHSU nephrology unit, Plaintiff's evaluation from his two weeks at the Kaiser pediatric clinic was positive and contained no professionalism concerns. In fact, at Kaiser Plaintiff had more total contact hours with the supervising physician than at OHSU.

3.17   The emotional toll of the discriminatory treatment, professionalism accusations, and unjust grading during the pediatric nephrology rotation was severe. Plaintiff began experiencing worsening PTSD symptoms, severe stress, and insomnia. These symptoms required adjustments to prescribed medications and impacted his ability to concentrate to the best of his ability during subsequent rotations and standardized exam preparation. The prolonged psychological harm disrupted Plaintiff's daily functioning and academic performance.

3.18   The wrongful failing grade in PEDI 730 will have a lasting impact on his future earnings. Very shortly Plaintiff will begin the application process for residency. The process of "matching" for residencies is extremely competitive: the presence of a "fail" in any rotations is

Complaint for Damages
Page 5 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

extremely detrimental to a student's chances. This might even endanger Plaintiff's ability to receive a residency at all. If he does match for a residency, the fail grade will likely mean he receives a lower caliber placement, which in turn has a very real impact on future job opportunities and pay scales.

3.19    The failing grade also placed Plaintiff's access to federal educational benefits in jeopardy. Specifically, Plaintiff's eligibility for continued VA funding that he relies on for tuition and living expenses is now at risk, creating both academic and financial instability. Additionally, a dismissal from medical school would render it nearly impossible to transfer to another program, making the consequences of OHSU's actions career-ending.

3.20    Plaintiff also experienced retaliation for seeking appropriate accommodations for his disability. Plaintiff had official accommodations with the OHSU Office for Student Access that include: extended testing time; consideration for adjustments to exam schedule; flexibility in attendance and ability to reschedule exams due to disability-related illness; and preferential clinical placement in the Portland Metro area when possible.

3.21    In approximately June 2023, Plaintiff engaged in a series of email exchanges with the Office for Student Access, which in turn engaged with the OHSU testing center about the amount of extended time he should receive for his final exams. The testing center staff were ultimately unwilling to provide the full amount of time Plaintiff was to receive for longer exams.

3.22    After the exchange in which Plaintiff advocated for himself and his right to extended time, a person from the testing site filed a Professionalism Concern Report ("PCR") regarding a class post that Plaintiff had made over a month prior. The timing of this PCR and the staleness of the allegations supports the conclusion that the PCR was made in retaliation for

Complaint for Damages
Page 6 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

Plaintiff's advocacy.

3.23   On another occasion, Plaintiff was suffering from symptoms of IBS immediately before an exam and was a few minutes late to the pre-seating period, although the exam had not started. Other students arrive similarly late for exams. Plaintiff had previously advocated for accommodations for IBS, and did so after the incident. OHSU denied accommodations for this disability; in fact Plaintiff received a PCR for this disability-related instance of tardiness. OHSU did not reasonably take into account Plaintiff's disability in issuing the PCR.

3.24   Because PCRs are not confidential, Plaintiff lost the ability to keep his disabilities confidential when he defended the PCR as based on disability. Known disabilities create negative stereotypes in the medical school community and can impact residency selection.

3.25   The Plaintiff submitted a discrimination complaint to the OHSU Office of Civil Rights Investigation and Compliance ("OCIC"). The OCIC, however, declined to open a full investigation.

3.26   On May 12, 2025, the OHSU Medical Progress Board referred Plaintiff to dismissal hearing rather than offering remediation due to the professionalism concerns named in the PEDI 730 evaluations and the PCRs. Medical schools do not generally accept applicants who have a dismissal on their record, such that dismissal is career-ending.

## IV.   CAUSES OF ACTION

**Count 1: Claims for Damages Due to Violations of Title VI of the Civil Rights Act of 1964**

4.1   The factual allegations set forth in the above paragraphs are incorporated by

Complaint for Damages
Page 7 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

reference.

4.2  The claims in Count 1 are civil rights claims against the Defendants for damages.

4.3  Because Plaintiff is a person of Iranian descent who was raised primarily in Iran, he falls in the class of persons protected by 42 U.S.C. § 2000d et seq.

4.4  At all times material to this case, the Defendant, as well as its agents, knew that Plaintiff is a person of Iranian descent.

4.5  Title VI of the Civil Rights Act of 1964 states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

4.6  Defendant receives money from the United States government in the form of research grants and funding as well as federal financial aid for students.

4.7  Because the Defendant receives this money, it cannot discriminate against Plaintiff on the basis of race or national origin.

4.8  As is set forth in the preceding fact section, the Defendant discriminated against the Plaintiff on the basis of race and/or national origin in the following ways:

    A.  making derogatory jokes about people with accents;

    B.  excluding Plaintiff from educational time usually provided to rotation students on the basis of racial animus;

    C.  implying Plaintiff is sexist due to his national origin; and

    D.  failing Plaintiff for a pretextual reason.

4.9  If Plaintiff prevails, he is entitled to reasonable attorneys' fees and costs.

Complaint for Damages
Page 8 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

**Count 2: Claims for Damages Due to Violations of § 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act**

5.1     The factual allegations set forth in the above paragraphs are incorporated by reference.

5.2     The claims in Count 2 are civil rights claims against the Defendants for damages.

5.3     Because Plaintiff has been diagnosed with PTSD and depression, he is "disabled" within the meaning of both the Americans with Disabilities Act ("ADA") and under § 504 of the Rehabilitation Act of 1973 ("§ 504").

5.4     Plaintiff falls into the class of persons whose rights are specifically protected by both statutes.

5.5.    At all times material to this case, the Defendant knew that Plaintiff is disabled within the meaning of both the ADA and § 504.

5.6     Title II of the ADA provides: "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

5.7.    Section 504(a) states: "No otherwise qualified individual with a disability in the United States shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (codifying § 504).

5.8     Defendant receives money from the United States government.

5.9     Because the Defendant receives this funding, the Defendant cannot discriminate against Plaintiff on the basis of his disabilities.

Complaint for Damages
Page 9 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

5.10   As is set forth in the preceding fact sections, the Defendant discriminated against Plaintiff by retaliating against him for advocating for his disability accommodations.

5.11   Persons employed by the Defendant possessed actual notice of the discrimination and the possibility of other discrimination.

5.12   The Defendant's discriminatory conduct effectively excluded Plaintiff from participating in, and receiving full access to, the benefits of the Defendant's programs and activities.

5.13   The Defendants' conduct was purposeful, done in bad faith, carried out with a discriminatory animus, and amounted to intentional discrimination against Plaintiff on the basis of his disability and in violation of the ADA, § 504, and their implementing regulations.

5.14   Defendants retaliated against Plaintiff for asserting his rights under the ADA, § 504, and their implementing regulations.

5.15   As a result of the Defendants' conduct, the Plaintiff. sustained the following damages:

   A.   loss of educational opportunities enjoyed by other Students who do not have disabilities;

   B.   mental anguish and emotional distress, including fear, nervousness, sadness, anxiety, humiliation, shock, shame, embarrassment, apprehension, and ordeal;

   C.   loss of enjoyment of life; and

   D.   loss of dignity.

5.16   If Plaintiff prevails, he is entitled to reasonable attorneys' fees and costs.

## V.   REQUEST FOR RELIEF

6.1   Based on the foregoing, the Plaintiff requests:

Complaint for Damages
Page 10 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)

A. That the Court assumes jurisdiction of all of Plaintiff's civil rights/damages claims;

B. That the Court orders a trial before a struck jury on all claims triable by a jury;

C. For the jury to award to him compensatory, general, and special damages permitted by state and federal law against the Defendants;

D. For the Court to enter judgment against the Defendants;

E. Where and when permitted by state and federal law, for the Court to award attorneys' fees and costs to Plaintiff and against the Defendant in his civil rights/damages claims;

F. And, as justice dictates, for the Court to grant any other relief deemed necessary or appropriate by the Court.

## VI. JURY DEMAND

Plaintiff demands a trial by a struck jury.

Dated: May 29, 2025

CEDAR LAW PLLC

_____
Anna Moritz, OSB No. 225306

_____
Alex Hagel, OSB No. 226147

600 1st Ave., Ste. 330, PMB 96563
Seattle, WA 98104
Ph: (206) 607-8277
Email: anna@cedarlawpllc.com
        alex@cedarlawpllc.com
Attorneys for the Plaintiff

Complaint for Damages
Page 11 of 11

Cedar Law PLLC
600 1st Ave, Ste. 330, PMB 96563
Seattle, WA 98104-2246
206.607.8277 (tel)
206.237.9101 (fax)